UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Shawn O'Neal, | ) | Civil Action No.:____4:25-cv-2590-SAL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | COMPLAINT |
| | ) | |
| The Bureaus, Inc., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

# COMPLAINT

1.      This is an action brought by Plaintiff, Shawn O'Neal, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.*, (hereinafter "FCRA"). Plaintiff also seeks compensatory and punitive damages for Defendant's violations of South Carolina common law.

2.      The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3.      Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

4. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §1681s-2(b), which is one of the cornerstone provisions of the FCRA.

5. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

6. The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

## JURISDICTION AND VENUE

7. This Court has Jurisdiction under 15 U.S.C. §1681p, and 28 U.S.C. §1331, §1332, and §1367.

8. Venue is proper in the Florence Division because the Plaintiff resides in Darlington County and the Defendant transacted business in this division.

## PARTIES

9. Plaintiff, Shawn O'Neal, is a resident and citizen of the State of South Carolina, Darlington County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10. Defendant, The Bureaus, Inc., is an Illinois corporation that may be served with process through its registered agent for service of process, Corporation Service Company, 508 Meeting Street, West Columbia, South Carolina 29169. Defendant is a data furnisher of information to the consumer reporting agencies ("CRA"). At all time and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this Division.

11. Defendant executed a data furnisher agreement with each of the CRAs.

12. Said agreements require Defendant to follow all applicable federal, state, and local laws, including the FCRA, and notify the CRAs promptly upon learning that information furnished is inaccurate or incomplete.

## FACTUAL ALLEGATIONS

13. On July 11, 2023, Plaintiff obtained a copy of his Equifax credit report and discovered there were multiple accounts reporting incorrectly. Specifically, The Bureaus, Account 41583**** (hereinafter referred to as the "Account"), was reporting a collection account for Capital One with a past due balance of $807.00.

14. On or about July 11, 2023, Plaintiff mailed a dispute letter **("First Equifax**

3

**Dispute")** to Equifax, wherein he stated he had obtained his credit report online and found a number of items were being reported incorrectly. Specifically, Plaintiff disputed The Bureaus, Account No. 41583****, a collection account for Capital One Bank, because he never had a Capital One account. Plaintiff provided Equifax with his name, Social Security number, date of birth, and address. Equifax received Plaintiff's First Dispute on or about July 19, 2023, and thereafter forwarded same to Defendant.

15. On or about July 11, 2023, Plaintiff mailed a dispute letter **("First Experian Dispute")** to Experian, wherein he stated he had tried to get a copy of his Experian credit report online, but was unable to do so. Plaintiff requested that Experian send him a copy of his credit report. Plaintiff also informed Experian there were accounts being reported incorrectly on his other credit reports and asked Experian to remove them if they were reporting on his Experian credit report. Specifically, Plaintiff disputed The Bureaus, Account, a collection account reporting for Capital One Bank, because he had never had a Capital One account. Experian received Plaintiff's First Dispute on July 16, 2023.

16. On July 11, 2023, Plaintiff obtained a free copy of his TransUnion credit report online and discovered The Bureaus was also reporting on his TransUnion report.

17. On or about July 11, 2023, Plaintiff mailed a dispute letter **("First TransUnion Dispute")** to TransUnion, wherein Plaintiff disputed the Account as a fraudulent account because Plaintiff never had a Capital One credit card. TransUnion received Plaintiff's First Dispute on July 15, 2023, and thereafter forwarded same to Defendant.

18. On or about July 17, 2023, Experian sent Plaintiff a letter stating it had received Plaintiff's recent request regarding his credit information, but that it didn't appear it was

4

sent by Plaintiff and thereby Experian would not be taking any action on Plaintiff's alleged request. After receiving Experian's July 17, 2023 letter, Plaintiff called Experian to inform them he did in fact send the July 11, 2023, dispute letter. Experian told Plaintiff he would get a response within 10 days.

19.     On or about July 21, 2023, Equifax sent Plaintiff the results of its investigation into Plaintiff's dispute stating that The Bureaus had verified the Account as reporting correctly. As a result, the fraudulent Account continued to be reported on Plaintiff's Equifax credit report.

20.     On or about July 21, 2023, TransUnion sent Plaintiff the results of its investigation into Plaintiff's dispute wherein TransUnion notified Plaintiff that The Bureaus had verified the Account as accurate. As a result, the Account continued to be reported on Plaintiff's TransUnion credit report.

21.     On or about August 21, 2023, Plaintiff received a new copy of his Experian credit report, which showed The Bureaus was still reporting the Account as a collection account with a balance of $807 belonging to Plaintiff.

22.     On or about August 18, 2023, Plaintiff mailed another dispute letter **("Second Equifax Dispute")** to Equifax, wherein he stated he had received the Investigation Results from Equifax, but his credit report was still incorrect. Plaintiff again disputed the reporting of the Account as Plaintiff never opened an account with Capital One, and never had or used a Capital One credit card. Equifax received Plaintiff's Second Dispute letter August 24, 2023, and thereafter forwarded same to Defendant.

23.     On or about August 18, 2023, Plaintiff mailed a new dispute letter to TransUnion

**("Second TransUnion Dispute")**, wherein he stated he had received the Investigation Results from TransUnion, but his credit report was still incorrect. Plaintiff requested TransUnion send him a copy of every document that had been provided to TransUnion to verify and/or update the inaccurate Account. Plaintiff also requested TransUnion to delete the Account because it was a fraudulent collection account reporting for a Capital One Bank card which did not belong to Plaintiff. Trans Union received Plaintiff's Second Dispute letter August 24, 2023, and thereafter forwarded same to Defendant.

24. On or about August 21, 2023, Plaintiff mailed another dispute letter **("Second Experian Dispute")** to Experian. Plaintiff disputed the Account as a fraudulent collection account because he never opened or used a Capital One Bank card. Experian received Plaintiff's Second Dispute letter August 26, 2023, and thereafter forwarded same to Defendant.

25. On or about August 30, 2023, Equifax sent Plaintiff the results of its investigation into Plaintiff's dispute wherein Equifax stated Defendant had verified the Account as accurate. As a result, the fraudulent Account continued to be reported on Plaintiff's Equifax credit file.

26. On or about September 20, 2023, Plaintiff received Experian's results of its investigation into Plaintiff's dispute showing Experian deleted the Account from Plaintiff's Experian credit report.

27. On or about September 20, 2023, TransUnion sent Plaintiff the results of its investigation into Plaintiff's dispute showing The Account had been deleted from Plaintiff's TransUnion credit report.

6

28. On or about October 6, 2023, Plaintiff mailed a third dispute letter to Equifax **("Third Equifax Dispute").** Plaintiff again disputed the Account as a fraudulent account. Plaintiff informed Equifax that he had never had a Capital One card. Plaintiff again asked Equifax to send a copy of every document that was provided to them to verify or update the Account. Equifax received Plaintiff's Second Dispute letter October 18, 2023, and thereafter forwarded same to Defendant.

29. On or about October 24, 2023, Equifax sent Plaintiff the results of its investigation showing the Account had been removed from Plaintiff's Equifax credit report.

30. Plaintiff does not know when Defendant first began reporting the Account on his credit reports with the CRAs. Plaintiff first learned the Account was reporting on his credit reports in July 2023. From at least July 2023 through October 2023, Defendant reported false, libelous, inaccurate, and defamatory information regarding the Plaintiff to the national credit bureaus and to numerous third parties. While Defendant was reporting the fraudulent Account as belonging to Plaintiff, said information was provided to and/or viewed by Syncb/Lowes, Comenity Servicing, LLC, LexisNexis/Ins/State Farm, Bk of Amer, Conn Appliances Inc, LexisNexis/Ins/P&C, Progressive Insurance, AT&T Services, Clarity Set Financial, Ally Credit Card, Credit One Bank, Ollo/Act, Granite Bay Acceptance C, Gemb/Sams, T-Mobile, RPR Properties Holdings LLC dba Private US Loans, and Kuber Financial.

31. Defendant received at least four ACDVs from the CRAs and each time verified the reporting of the fraudulent Account as accurate.

32. Defendant's knowing and repeated violations of the FCRA warrants an award of

punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-0952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

## COUNT ONE
### (Fair Credit Reporting Act)

33. The Plaintiff adopts the averments and allegations of paragraphs 13 through 32 hereinbefore as if fully set forth herein.

34. Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation after receiving notice that the Plaintiff disputed the Account information said Defendant had provided to a consumer reporting agency.

35. Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agency pursuant to §1681i.

36. Defendant negligently violated 15 U.S.C. §1681s-2(b) by failing to conduct an investigation as to the accuracy of the information reported by the Defendant to the consumer reporting agencies.

37. Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(C) by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any, to the consumer reporting agencies.

38. Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the accounts the subject of this action was inaccurate, incomplete, false, and misleading.

39. As a result of Defendant's violations set forth above, the Plaintiff suffered damage

to his credit and credit reputation, and lost credit opportunities. Additionally, Plaintiff suffered worry, anxiety, physical sickness, physical pain, headaches, loss of sleep, distress, family discord, loss of enjoyment of life, lost time, frustration, embarrassment, and humiliation. Plaintiff has also suffered damages for attorneys' fees, certified mail expenses, and other out of pocket losses.

## COUNT TWO
### (Fair Credit Reporting Act)

40.     The Plaintiff adopts the averments and allegations of paragraphs 13 through 39 hereinbefore as if fully set forth herein.

41.     Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation after receiving notice that the Plaintiff disputed the Account information Defendant had provided to a consumer reporting agency.

42.     Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agency pursuant to §1681i.

43.     Defendant willfully violated 15 U.S.C. §1681s-2(b) by failing to conduct an investigation as to the accuracy of the information reported by Defendant to a consumer reporting agency.

44.     Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(C) by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any, to the consumer reporting agency.

45.     Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the account the subject of this action was

inaccurate, incomplete, false, and misleading.

46. As a result of Defendant's violations set forth above, the Plaintiff suffered damage to his credit and credit reputation, and lost credit opportunities. Additionally, Plaintiff suffered worry, anxiety, physical sickness, physical pain, headaches, loss of sleep, distress, family discord, loss of enjoyment of life, lost time, frustration, embarrassment, and humiliation. Plaintiff has also suffered damages for attorneys' fees, certified mail expenses, and other out of pocket losses.

## COUNT THREE
### (Defamation, Libel and Slander)

47. The Plaintiff adopts the averments and allegations of paragraphs 13 through 46 hereinbefore as if fully set forth herein.

48. Defendant willfully, wantonly, recklessly and/or maliciously published and communicated false and defamatory statements regarding Plaintiff to third parties and the public at large. Said statements harmed Plaintiff's reputation and caused Plaintiff physical sickness, mental anguish and emotional distress.

49. Said communications were false in that Plaintiff was not indebted to Defendant. Plaintiff did not owe any balance on the Account the subject of this action as he never had a Capital One account. The Account was either a fraudulent account opened in Plaintiff's name or belonged to some other individual and was wrongly reported as Plaintiff's.

50. Said false and defamatory statements have harmed the reputation of Plaintiff and/or deterred third persons from associating with Plaintiff. Specifically, Defendant undertook to collect the Account and reported said Account as a collection account on Plaintiff's

credit files. Plaintiff's credit files were viewed by numerous third parties as set out above.

51. Defendant communicated to third parties and the public at large false information concerning Plaintiff, disseminating and imputing false and misleading credit worthiness information concerning Plaintiff, including but not limited to reporting that Plaintiff owed the Account the subject of this action.

52. At the time said communications were made, Defendant knew or should have known the falsity of the communications or recklessly disregarded the potential inaccuracy of the information, yet knowingly, willfully and maliciously communicated the falsity.

53. As a result of the intentional communications to the third parties of the false information, Plaintiff was caused to suffer injury to his reputation in the eyes of his community and the public at large and was forced to endure credit reporting of the Account the subject of this action, in spite of the fact that Plaintiff did not owe the Account as it was not his account.

54. As a proximate consequence of said defamation, libel and slander, Plaintiff was caused to have negative credit reports, to be held up to public ridicule or shame, to have his lose credit opportunities, and made to suffer worry, anxiety, physical sickness, physical pain, headaches, loss of sleep, distress, family discord, loss of enjoyment of life, lost time, frustration, embarrassment, and humiliation for which he claims compensatory and punitive damages.

## **AMOUNT OF DAMAGES DEMANDED**

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

  A. Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

  B. Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

  C. Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2);

  D. For compensatory and punitive damages in an amount to be determined by a struck jury for Defendant's defamation, libel and slander of Plaintiff;

  E. For this matter to be heard by a jury; and

  F. For such other and further relief as this Court deems necessary and proper.

           /s/ *Penny Hays Cauley*
           Penny Hays Cauley, Fed. ID No. 10323
           Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com

    **PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

           */s/ Penny Hays Cauley*
           Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
The Bureaus, Inc.
c/o Corporation Service Company – Registered Agent
508 Meeting Street
West Columbia, South Carolina 29169